[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 719.]

RICHLAND COUNTY BAR ASSOCIATION *v.* GIBSON.

[Cite as *Richland Cty. Bar Assn. v. Gibson*, 1995-Ohio-95.]

*Attorneys at law—Misconduct—Two-year suspension with second year of suspension suspended on condition of making full restitution—Conduct prejudicial to the administration of justice—Neglect of an entrusted legal matter—Failing to decline employment when professional judgment on behalf of client is likely to be adversely affected—Failure to cooperate in investigation of misconduct.*

(No. 95-821—Submitted July 26, 1995—Decided October 11, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-14.

_____

{¶ 1} In a complaint filed February 22, 1994, relator, Richland County Bar Association, charged respondent, Harold E. Gibson of Mansfield, Ohio, Attorney Registration No. 0020159, with one count of misconduct involving violations of, *inter alia*, DR 1-102(A)(5) (conduct prejudicial to the administration of justice), 6-101(A)(3) (neglect of an entrusted legal matter), 5-105(A) (failing to decline employment where professional judgment on behalf of client is likely to be adversely affected), and Gov.Bar R. V(4)(G) (failure to cooperate in investigation of misconduct). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on November 4, 1994.

{¶ 2} Relator's charges arose from respondent's conduct during the administration of the estate of his father-in law, Andronic Orosan, who died in February 1987.

{¶ 3} From 1983 until his death, Andronic and his wife, Anna, resided with respondent and his wife, Mary Ann. None of Mary Ann's three siblings contributed

to the support of their parents. According to respondent and Mary Ann, Andronic and they had orally agreed at some point that respondent would manage the Orosan family business, "Nick's Place"; that he would pay Andronic $250 to 300 per month from which Andronic would pay certain expenses of the establishment; and that respondent and his wife would keep any profits the business generated. Andronic retained the liquor permit and title to this real estate under the agreement, and respondent apparently also provided some legal services to Andronic.

{¶ 4} Andronic's will left his entire estate to Anna and named her as the executor. Anna declined to accept this trust, and her health ultimately required the appointment of a guardian to act on her behalf. Mary Ann and one of her brothers accepted their appointment as co-fiduciaries in accordance with other provisions in the will. Respondent agreed to represent Mary Ann and her brother in their fiduciary capacities.

{¶ 5} Respondent continued to operate Nick's Place after Andronic's death, just as he had before, purportedly by agreement with the Orosan siblings. Respondent did not advise the probate court of this continued operation, nor did he apply for the probate court's approval. Moreover, when respondent filed the inventory for Andronic's estate, he did not report to the probate court the value of the liquor permit or all the other assets of Nick's Place—he instead identified only a partial interest in the real estate. Respondent also did not report in his accountings for the estate the income or losses attributable to Nick's Place, and he, apparently, did not maintain the funds generated by this business in a separate bank account.

{¶ 6} Respondent confessed to the panel that he had not considered Nick's Place an estate asset and, consequently, had not properly accounted for it during his representation of Andronic's estate. He explained that his judgment had been clouded by sentiment for the Orosan family's Depression-era tavern. He conceded his mistake, and implied that he first realized it in July 1993, when the probate court announced that his oral agreement with Andronic was unenforceable.

2

**{¶ 7}** In April 1993, Mary Ann resigned as executor of Andronic's estate in response to a request for her removal by one of her brothers. Since Mary Ann's other brother and co-fiduciary had resigned earlier, the probate court appointed an administrator with will attached, who asserted that Nick's Place was an estate asset. The probate court agreed and directed respondent to respond accordingly.

**{¶ 8}** In September 1993, respondent filed amended accountings for the years when Mary Ann was a fiduciary, and all except one of these accountings reflected that Nick's Place had annually lost money. On the administrator's motion, the probate court disapproved the amended accountings on the ground that they lacked appropriate documentary verification and consistently showed unjustified deficit balances for Andronic's estate. In February 1994, the administrator charged respondent and his wife with concealing or embezzling estate assets and sought damages resulting from the mismanagement of Nick's Place, which included certain unpaid taxes. On June 10, 1994, the probate court approved a settlement in the administrator's action, and entered judgment ordering respondent and Mary Ann to pay Andronic's estate at least $161,239.22: $115,684.62 for outstanding taxes, penalties, and interest owed by Andronic's estate and attributable to the losses incurred by Nick's Place; and $45,554.60 for attorney fees and court costs incurred by the administrator in resolving the problems caused by respondent's continued operation of that business.[1] Respondent has made little, if any, effort to satisfy this judgment.

**{¶ 9}** From this evidence, the panel determined that respondent violated DR 1-102(A)(5) because he failed over a six-year period to completely disclose to the probate court his continued operation of a decedent's business. The panel found a violation of DR 6-101(A)(3) because respondent's operation of that business

---

1. The settlement contained provisions for a credit toward the amount of damages attributable to tax liability in the event tax authorities agreed to a compromise of the designated amount.

resulted in neglect. The panel found respondent in violation of DR 5-105(A) because he believed he had a proprietary interest in an estate asset and yet represented the fiduciaries of the estate without any meaningful disclosure or waiver of their conflicting interests. Finally, the panel found that respondent violated Gov.Bar R. V(4)(G) because he admitted having made no response to relator's efforts to investigate the charges of misconduct against him.

{¶ 10} In recommending a sanction for this misconduct, the panel considered respondent's long and distinguished career as a practitioner, as well as the testimony and correspondence of his many professional and social acquaintances, all of whom described his competence and integrity. The panel also considered that respondent had received a public reprimand in 1978, *Ohio State Bar Assn. v. Gibson*, No. DD 78-3, but decided this discipline did not justify enhancement pursuant to Gov.Bar R. V(6)(C).

{¶ 11} The panel recommended that respondent be suspended from the practice of law for two years, but that imposition of this sanction be stayed on the condition that he make restitution consistent with the June 10, 1994 settlement order of the probate court within three years of the final order issued in this case. The board adopted the panel's findings of misconduct and its recommendation.

––––––––––––––––––

*William T. McIntyre*, for relator.

*Mark H. Aultman*, for respondent.

––––––––––––––––––

*Per Curiam.*

{¶ 12} Upon review of the record, we concur in the board's findings of misconduct. However, we find respondent's misconduct in the administration of this decedent's estate deserving of a more severe sanction than the board recommended. Moreover, we agree with relator that three years is too long for this estate to wait for restitution from respondent, who apparently possesses assets from

which he could satisfy the judgment against him. Therefore, we order that respondent be suspended from the practice of law in Ohio for a period of two years; however, we suspend imposition of the second year of this suspension period on the condition respondent make full restitution, including interest assessed at the legal rate, in accordance with the probate court's June 10, 1994 settlement order by the end of the first year. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., WRIGHT, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

_____

**DOUGLAS, J., dissenting.**

{¶ 13} I respectfully dissent. I would order the sanction recommended by this court's Board of Commissioners on Grievances and Discipline. Because the majority does not do so, I dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

_____